ADAMS, J.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CRAIG A. BRAGG, | ) | CASE NO. 5:07CV1389 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| RENT-A-CENTER, INC., et al., | ) | AND ORDER |
| | ) | [RESOLVING DOC. 4] |
| Defendants. | ) | |

This action is before the Court upon defendants' Motion to Dismiss the Case and Compel Arbitration (Doc. 4).[1] The Court has reviewed the memorandum in support, memorandum in opposition (Doc. 6), and reply memorandum (Doc. 12). For the reasons set forth below, the Court will grant the motion to compel.[2]

Plaintiff Craig A. Bragg is a former employee of defendant Rent-A-Center, Inc. ("RAC"), a business that rents furniture and appliances to customers on a "rent-to-own" basis. In February 2007, Mr. Bragg filed a complaint in the Stark County, Ohio Court of Common Pleas, being Case No. 2007CV00523. On May 4, 2007, the plaintiff filed a seven-count Amended Complaint (Doc. 1-15) against RAC and two of its employees with whom the plaintiff worked, defendants Clint Moore ("Moore"), and Josh Hawk ("Hawk"). He asserts claims arising out of his former employment with RAC and the circumstances surrounding a leave of absence that he

---

[1] Local Rule 8.1(a) requires that the parties refrain from including, or partially redact, certain personal identifiers including social security numbers. Given the language of the rule, the defendants should not have filed unredacted copies of the Agreements (that include the plaintiff's social security number) as exhibits to the motion.

[2] The court did not consider the Affidavit of Vincent McElfresh (Doc. 12-3) in this ruling. *See Pritchard v. Dent Wizard Intern. Corp.*, 210 F.R.D. 591, 596 n.2 (S.D. Ohio 2002).

took during his employment. The First Cause of Action is a claim that RAC fraudulently induced Mr. Bragg to sign an arbitration agreement in November 2006. The Second Cause of Action is for unauthorized disclosure of confidential medical information. The Third Cause of Action is for invasion of privacy. The Fourth Cause of Action is for intentional infliction of emotional distress. The Fifth Cause of Action asserts a claim pursuant to the Health Insurance Portability Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d-1, *et seq.* and 45 C.F.R. § 164.501, 508a. The Sixth and Seventh Causes of Action are for discrimination based on actual and/or perceived disability in violation of Ohio Rev. Code Chap. 4112. The First, Second, Third, Fifth, and Sixth Causes of Action are against RAC only. The Fourth Cause of Action is against all of the defendants. The Seventh Cause of Action is against Messrs. Moore and Hawk only. Defendants removed the case to this Court on May 14, 2007, on the basis of federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441.

The Court examines arbitration language in a contract in light of the strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration. *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878 (6th Cir. 2002). Moreover, the Court of Appeals for the Sixth Circuit has previously noted the large number of cases from the Supreme Court encouraging arbitration in a wide variety of contexts and emphasizing the federal policy in favor of arbitration. *Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp.*, 878 F.2d 167, 169 (6th Cir. 1989). The Supreme Court has "interpreted the Federal Arbitration Act as establishing that, 'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

Ohio and Federal policy strongly favor arbitration as a method to resolve disputes. *See* 9 U.S.C. §§ 1-16; Ohio Rev. Code § 2711.01, *et seq. See also ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498 (1998). The Federal Arbitration Act ("FAA") provides that, if a suit is filed in the district court upon any issue that is subject to a written arbitration agreement, the court shall stay the trial of such action until arbitration has been had in accordance with that agreement. *See* 9 U.S.C. § 3. Further, "a presumption favoring arbitration arises when the claim in dispute falls within the scope of the arbitration provision." *Dept. of Admin. Services v. Moody/Nolan Ltd., Inc.*, No. 00AP-336, 2000 WL 1808330 (Ohio App. 10 Dist. Dec. 12, 2000). When parties have agreed to arbitrate a dispute, arbitration is the preferred method of resolution.

Defendants seek an order compelling arbitration and dismissing the case at bar, citing a Mutual Agreement to Arbitrate Claims ("Agreement"), authored by RAC. Plaintiff, on two occasions 10 months apart, signed copies of written agreements to arbitrate any employment-related claims. *See* Docs. 4-2 and 4-3.

The Agreement, signed by Mr. Bragg on November 15, 2006, binds both employer and employee to arbitration. It provides in pertinent part as follows:

> The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present or future, including without limitation, claims arising out of or related to my . . . assignment/employment, and/or the termination of my assignment/employment that . . . I may have against . . . the Company . . . [and/or] . . . its . . . employees, or agents in their capacity as such. . . .
>
> The only claims that are subject to arbitration are those that, in the absence of this Agreement, would have been justiciable under applicable state or federal law. The claims covered by this Agreement include, but are not limited to: . . . claims for breach of any contract or covenant (express or implied); tort claims for discrimination (including, but not limited to race, sex, sexual harassment, sexual orientation . . . or disability); . . . and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance. . . .

3

> Except as otherwise provided in this Agreement, both the Company and I agree that neither of us shall initiate or prosecute any lawsuit or adjudicative administrative action (other than an administrative charge of discrimination to the Equal Employment Opportunity Commission or an administrative charge within the jurisdiction of the National Labor Relations Board) in any way arising out of or related to any claim covered by this Agreement. . . .

Doc. 4-3 at 1. Furthermore, on the signature page of the Agreement, the plaintiff acknowledged that he had "CAREFULLY READ THIS FIVE (5) PAGE MUTUAL AGREEMENT TO ARBITRATE CLAIMS. . . ." Finally, the plaintiff waived his right to a judicial forum for all claims covered by the Agreement: ". . . I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL AND THAT PURSUANT TO THE TERMS OF THIS AGREEMENT, I AM AGREEING TO ARBITRATE CLAIMS." *Id.* at 5 (capitals in original; underline added).

Plaintiff does not dispute that he twice signed agreements to arbitrate any employment-related claims, or that the claims asserted in the case at bar fall under the scope of the Agreement. Rather, Mr. Bragg argues that the Agreement, signed on November 15, 2006, should not be enforced because he alleges that: (1) he was only given the signature page of the Agreement by Mr. Moore, he was lead to believe that the signature page was the entire Agreement, and that this constituted unconscionability and/or fraud in the inducement; (2) he was required to sign the Agreement in order to get his promotion to Assistant Manager, which caused him duress and resulted in a contract of adhesion; and (3) the Agreement does not state that it is final and binding. Despite attaching a copy of the signature page from the Agreement,

4

signed on January 17, 2006,[3] as Exhibit A to the Amended Complaint, the plaintiff makes no allegations whatsoever concerning that Agreement.

The tort of fraudulent inducement has the following elements: (1) an actual or implied false representation concerning a fact or, where there is a duty to disclose, concealment of a fact, material to the transaction; (2) knowledge of the falsity of the representation or such recklessness or utter disregard for its truthfulness that knowledge may be inferred; (3) intent to induce reliance on the representations; (4) justifiable reliance; and (5) injury proximately caused by the reliance. *Watson v. Thompson*, No. CT2005-0060, 2006 WL 2076812, at ¶ 45 (Ohio App. July 18, 2006). Nowhere in the Amended Complaint does the plaintiff allege that he relied on the misrepresentation to his detriment or that he incurred an injury proximately caused by the reliance--both essential elements of a successful fraudulent inducement claim. *See Tenaglia v. Ryan's Family Steak Houses, Inc.*, No. 4:02-2684-25BH, slip op. at 18 n. 6 (D.S.C. May 9, 2003) (applying South Carolina law; compelling arbitration after rejecting argument that contract should be voided due to fraud in the inducement). Therefore, the plaintiff has not alleged all of the requisite elements of fraudulent inducement.

In determining whether an agreement to arbitrate is valid, federal courts should apply ordinary state law governing the formation of a contract. *Seawright v. American General Financial Services, Inc.*, 507 F.3d 967, 972 (6th Cir. 2007),[4] citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995). Under Ohio law, an agreement to arbitrate must be

---

[3] Given the fact that Mr. Bragg was hired by RAC in January 2006, the "1/17/0<u>5</u>" date written on the signature page of Doc. 4-2 appears to be incorrect.

[4] In *Seawright*, the Court of Appeals for the Sixth Circuit reversed the district court's denial of defendant's motion to compel arbitration because it held that the plaintiff's "knowing continuation of employment after the effective date of the arbitration program constituted acceptance of a valid and enforceable contract to arbitrate." *Id.* at 970.

both substantively and procedurally unconscionable for a court to preclude enforcement. *Dorsey v. Contemporary Obstetrics & Gynecology, Inc.*, 113 Ohio App.3d 75, 80 (1996). An agreement to arbitrate is substantively unconscionable when the terms of the agreement are unfairly one-sided. *Id.* A clause is procedurally unconscionable when one party lacks a meaningful opportunity to agree to the terms because of unequal bargaining power or because the effect of the agreement is not readily understandable. *Collins v. Click Camera & Video, Inc.*, 86 Ohio App.3d 826, 834 (1993).

Plaintiff does not allege in the Amended Complaint or argue in non-conclusory fashion in his memorandum in opposition to the within motion that the Agreement is substantively unconscionable, *i.e.*, the contract terms are unfair or unreasonable. As a showing on both prongs of the test is required, *Collins*, 86 Ohio App.3d at 834, the Court has no need to examine procedural unconscionability.

Next, the plaintiff argues that the Agreement is a contract of adhesion. Doc. 6 at 6. "A contract of adhesion exists where one party has little or no bargaining power and has no realistic choice as to terms." *McGuffey v. LensCrafters, Inc.*, 141 Ohio App.3d 44, 53 n. 6 (2001), citing *Nottingdale Homeowners' Ass'n., Inc. v. Darby*, 33 Ohio St.3d 32, 37 n. 7 (1987). Mr. Bragg has not alleged or argued that he would be unable to find suitable employment if he had refused to be a party to the Agreement. Therefore, the Court finds the plaintiff has failed to allege a necessary element for asserting a claim that the agreement to arbitrate any employment-related claims is unenforceable as a contract of adhesion. *See Seawright*, 507 F.3d at 976 (arbitration agreement held not to be a contract of adhesion because plaintiff presented no evidence that she would be unable to find suitable employment if she had refused to be a party to the agreement).

6

Finally, the plaintiff argues that the language in the Agreement "does not constitute a final and binding provision." Doc. 6 at 8. This argument is particularly unpersuasive given the following provisions included in the Agreement that make it clear that arbitration is "final and binding":

> . . . I understand and agree that by entering into this Agreement . . ., I anticipate gaining benefits of a speedy, impartial, <u>final, and binding</u> dispute-resolution procedure.
>
> \* \* \*
>
> The Arbitrator shall render an award by written opinion . . .
>
> Any party shall have the right . . . to file with the Arbitrator a motion to reconsider . . . . The Arbitrator thereupon shall reconsider the issues raised by the Motion and promptly either confirm or change the decision, which . . . shall then be <u>final and conclusive</u> upon the parties.

Doc. 4-3 at 1and 3(underline added). Accordingly,

Defendants' Motion to Compel Arbitration (Doc. 4) is GRANTED.

IT IS SO ORDERED.

 January 18, 2008                      */s/ John R. Adams*
Date                                    John R. Adams
                                        U.S. District Judge